UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAMELA FRAZIER,

Plaintiff,

against

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL ACTION NO.: 18 Civ. 7966 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.   INTRODUCTION

Plaintiff Pamela Frazier ("Ms. Frazier") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  She seeks review of the August 8, 2017 decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB") benefits under the Act. Ms. Frazier contends that the Commissioner failed to develop the record and violated the treating physician's rule.  (ECF No. 29 at 3).  Ms. Frazier requests a remand to further develop the record and for further proceedings, or in the alternative, a remand based on a showing of new and material evidence pursuant to Sentence 6 of § 405(g).  (Id.)

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF Nos. 21, 27).  For the reasons set forth below, Ms. Frazier's motion (ECF No. 27) is GRANTED, the Commissioner's motion (ECF No. 21) is DENIED, and the case is remanded for further administrative proceedings consistent with this Opinion and Order.

## II.  BACKGROUND

### A.  Procedural History

On April 7, 2015, Ms. Frazier filed an application for DIB benefits claiming that following

three spinal surgeries, her lumbar spine condition rendered her unable to work since October 22,

2014.  (SSA Administrative Record ("R.") at 70–71, 81, 183–84, 193–201).  On June 5, 2015, the

SSA denied Ms. Frazier's application, finding that she was not disabled.  (R. 81, 93–96).

On July 14, 2015, Ms. Frazier filed a request for a hearing by an Administrative Law Judge

("ALJ").  (R. 97-98).  One week before her hearing, she submitted additional medical records and

Ms. Frazier's attorney informed the ALJ that Ms. Frazier was awaiting medical records that she

wished to submit post-hearing because they were vital to her claim.  (R. 431).  On June 28, 2017,

Ms. Frazier appeared and testified at a hearing before ALJ Seth I. Grossman.  (R. 24–69).  On

August 8, 2017 ALJ Grossman issued a decision that Ms. Frazier was not disabled under the Act.

(R. 81–89).  On July 9, 2018, the SSA Appeals Council granted Ms. Frazier's request for review,

reasoning that the hearing decision was not supported by substantial evidence.  (R. 178).  The

Appeals Council explained that ALJ Grossman failed to consider the testimony of medical expert,

Dr. Sree Devi Chandrasekhar.    (R. 179).    On August 24, 2018, after considering Dr.

Chandrasekhar's testimony, the Appeals Council issued an unfavorable decision denying Ms.

Frazier benefits.  (R. 5).

On August 30, 2018, after exhausting her administrative remedies, Ms. Frazier filed a

complaint in this Court.  (ECF. No. 2).  Ms. Frazier argues that the ALJ (1) failed to develop an

adequate record (a) by failing to obtain records from her surgeon (Dr. Ramesh Babu), her

neurologist (Dr. Robin Dharia), her physical therapist (Ms. Kristen Tracey), and her primary care

physician (Dr. John Minutillo); and (2) by failing to investigate discrepancies in the record regarding Ms. Frazier's ability to walk and use a cane. (ECF No. 29 at 15–19). Ms. Frazier also argues that the ALJ violated the treating physician rule by failing to provide adequate reasons for rejecting Dr. Babu's opinion. (Id. at 20–22). Ms. Frazier requests remand for further development of the record, or in the alternative, remand for the consideration of new and material evidence pursuant to Sentence 6 of 42 U.S.C. § 405(g).[1] (Id. at 22–25).

**B. Factual Background**

### 1. Non-medical evidence

Ms. Frazier was born on October 10, 1955 and is currently 64 years old. (R. 183). She graduated high school and attended college for one year, majoring in business administration. (R. 35–36). Her relevant work experience is primarily clerical and supervisory. (R. 235). From 1980 to 1995, Ms. Frazier worked as a "cultural arts coordinator" at the Police Athletic League. (R. 235). She was a program controller at the Department of Sanitation from 1996 until October 22, 2014, when she became disabled. (R. 83, 235). Ms. Frazier testified she could no longer work because she could not sit at the computer after her third spinal surgery. (R. 28).

Ms. Frazier lives by herself, does not drive, has never had a driver's license, but is able to travel to and from her appointments by car service. (R. 30). She has three children, two of whom live outside New York, and one of whom lives in Manhattan. (R. 33). She testified that her children visit her and she visits them. (R. 33). In February 2017, Ms. Frazier traveled about six

---

[1] Because the Court determines below that this action should be remanded based on the ALJ's failure to develop the record and improper treatment of the treating physician rule, the Court does not consider Ms. Frazier's alternative request for relief under Sentence 6 of 42 U.S.C. § 405(g).

and a half to seven hours to visit her son in Virginia, and in May 2017, she traveled about three hours to visit her daughter in Pennsylvania.  (R. 34–35).

Due to pain, Ms. Frazier has difficulty dressing herself in the morning.  (R. 32, 221).  She claims she is unable to wash her back or her feet or do her hair.  (R. 221).  She also has difficulty cooking but can microwave food.  (R. 222).  Her regular activities include attending church services, physical therapy, and medical appointments.  (R. 225).  She does not go out often because she cannot walk far before she feels pain.  (R. 225–26).

## 2.  Medical evidence

### a.  Dr. Kiran Patel

Dr. Kiran Patel was Ms. Frazier's doctor at the Spine and Pain Institute.  (R. 350).  From November 25, 2015 through April 3, 2017, he saw Ms. Frazier 17 times and gave her six epidural injections.  (R. 350–419).

Medical records from the Spine and Pain Institute occupy approximately 76 pages of the record and are largely repetitive.  Ms. Frazier's initial visit occurred on November 25, 2015. (R. 350).  Dr. Patel recorded the history of her injury, beginning 20 years ago.  (R. 350).  Ms. Frazier described lumbar back pain with symptoms including lower extremity numbness, lower back pain, and weakness in her right leg.  (R. 350).  The pain is described as burning and radiating to other parts of her body.  (R. 350).  Symptoms are exacerbated by standing and sitting for long periods of time.  (R. 350).  The report also lists her medications, indicates normal vital signs, and outlines treatment options, including epidural injections, further surgery, and spinal cord stimulation.  (R. 350–52).

At her next visit on December 9, 2015, Dr. Patel rechecked Ms. Frazier for neck pain and ordered an MRI of her lumbar spine and cervical spine.  (R. 353).  At her next visit on December 28, 2015, Dr. Patel noted that her pain was persisting with minimal improvement.  (R. 357). Unlike her last visit, Ms. Frazier began to experience lower extremity pain, lower numbness, and lower back pain.  (R. 353, 356).  Ms. Frazier received an epidural injection, which appeared to alleviate her pain by 50%, but it returned three weeks after the injection.  (R. 359-61).  The pain radiated to other areas of her body and she described it as dull and aching.  (R. 361).  Dr. Patel prescribed her additional pain medication, including Percocet.  (R. 362).

At her February 10, 2016 visit, Dr. Patel indicated much of the same information as previous reports.  (R. 366).  By that point, Ms. Frazier had had two epidural injections and was prescribed various opioid analgesics that were able to relieve some pain.  (R. 367).  In her subsequent visits on March 9, 2016 and April 4, 2016, Dr. Patel noted improved functionality and did not prescribe more pain medication or epidural treatments.  (R. 369–74).

On May 2, 2016, Ms. Frazier's pain returned and she began to decline.  (R. 375).  As for her neurological condition, Dr. Patel reported that she was experiencing numbness and her MRI showed mild cord compression at the surgery site.  (R. 377).  He prescribed additional pain medication and referred her to a neurosurgeon.  (R. 377).  Following this visit, Ms. Frazier received routine epidural injections but continued to experience pain.  On September 21, 2016, she began to complain of knee pain.  (R. 394).  Dr. Patel increased her Percocet dosage, gave her a knee injection, and administered a "Patrick's Test."  (R. 395).

On October 19, 2016, it appeared that Ms. Frazier has gained a significant amount of weight since she began seeing Dr. Patel.  (R. 400).  On November 16, 2016 Dr. Patel noted that

she was having persistent neck pain that had not improved and poor pain control even with current pain medications. (R. 404). He increased her Percocet dosage and changed other pain medications. (R. 404). He suggested she was experiencing tolerance to the pain medications and offered that she stop taking the medications for some time to fight the tolerance. (R. 404).

On December 5, 2016, Ms. Frazier received another epidural injection. (R. 407). On January 25, 2017, Dr. Patel noted that her pain was unchanged after intervention. (R. 409). He suggested that she seek surgical options given the severity of her condition and proceeded with an MRI of her cervical spine. (R. 410–11).

Ms. Frazier's last visit occurred on April 3, 2017. (R. 17). Dr. Patel reported that her hands had become numb, likely as a result of the Morphine he prescribed to her, beginning March 3, 2017. (R. 416–17). Marijuana was found in Ms. Frazier's urine toxicology, which led to the termination of her treatment at the Pain and Spine Institute. (R. 419). Ms. Frazier was referred to another doctor for a surgical consultation. (R. 419).

### b. **Dr. Ramesh Babu**

Dr. Ramesh Babu ("Dr. Babu") is the neurosurgeon who performed Ms. Frazier's three spinal surgeries. On October 27, 2014, Dr. Babu performed Ms. Frazier's third spinal surgery. (R. 256–57). Dr. Babu diagnosed Ms. Frazier with "lumbar spondylosis and spinal instability." (R. 256). Ms. Frazier described the surgery as a procedure to remove the screws previously placed in her lower spine because they were "eating away at [her] bones." (R. 28). After surgery, Dr. Babu reported a stable neurological condition. (R. 257). A surgery report was not placed in the record but Ms. Frazier testified to seeing Dr. Babu three times after the surgery and stated that he last examined her in 2016. (R. 29–30).

On December 10, 2014, Dr. Babu indicated that Ms. Frazier was still recovering from the procedure and could not perform any of the functions required for her job; she could not "stand, sit, walk, bend, lift," and was "100% disabled from work until May 2015." (R. 428). On December 10, 2015, Dr. Babu authorized Ms. Frazier to return to work, but with various restrictions including no standing for longer than ten minutes, no sitting for longer than ten minutes, no repeated bending, and no lifting more than five pounds. (R. 429). On February 12, 2016, Dr. Babu deemed Ms. Frazier permanently disabled with "failed back syndrome with chronic pain syndrome" and opined that no further surgical intervention could help her. (R. 427). At the time of the ALJ hearing, Ms. Frazier was still awaiting more medical records from Dr. Babu. (R. 29).

### c. <u>Kristen Tracey, DPT</u>

Kristen Tracey ("Ms. Tracey") has been Ms. Frazier's physical therapist since March 2015. (R. 23). The record contains a letter from Ms. Tracey dated April 23, 2015 indicating Ms. Frazier has, among other things, limited activity tolerance due to pain, impaired tissue mobility, trigger points throughout her periscapular region, and impaired functional mobility. (R. 234). She described Ms. Frazier as compliant with her home exercise program and receiving treatment twice a week. (R. 234). On a functional assessment report prepared in November 2016, Ms. Tracey limited Ms. Frazier to lifting less than five pounds, standing for less than one hour per day, and sitting for less than two hours in an eight-hour work day. (R. 271–73).

At the time of the ALJ hearing, Ms. Frazier was still awaiting more medical records from Ms. Tracey. (R. 29, 431). After the ALJ issued his decision, Ms. Tracey produced a letter from Ms. Tracey dated August 21, 2017, indicating, among other things, Ms. Frazier's "poor activity tolerance, decreased [range of motion], decreased trunk and lower extremity strength, impaired

joint and soft tissue mobility, trigger points throughout thoracolumbar soft tissue and impaired functional mobility." (R. 23). Ms. Tracey noted minimal progress "due to the chronic nature of her symptoms." (R. 23).

### d. Dr. Aurelio Salon

On May 26, 2015, Dr. Salon conducted a consultative internal medical examination in connection with Ms. Frazier's SSA application. (R. 263–67). Dr. Salon noted that Ms. Frazier reported back surgery in December 2009, September 2011, and October 2014. (R. 263). Ms. Frazier refused to walk on her heels or squat, did not need help getting on and off the exam table, and was able to rise without difficulty. (R. 264). During her exam, Dr. Salon noted that Ms. Frazier said she could not sit or stand for long periods of time and felt pain when she walked more than three blocks. (R. 263). Dr. Salon diagnosed Ms. Frazier with "status post lumbar surgery" and "obesity." (R. 266). Ms. Frazier stated that she always used a cane for weight bearing as prescribed by a doctor, and Dr. Salon opined that the cane was medically necessary. (R. 264). Ultimately, Dr. Salon stated that based on Ms. Frazier's medical history and his examination, he did not find Ms. Frazier was restricted in her ability to sit. (R. 266). However, he did find that her ability to climb, push, pull, carry heavy objects, and stand for long periods of time was restricted because of her status post lumbar spine surgeries. (R. 266).

### e. Dr. Ram Ravi

On April 21, 2017, Dr. Ravi conducted a consultative internal medical examination in connection with Ms. Frazier's SSA application. (R. 337). At the examination her chief complaints were neck pain, back pain, decreased visual acuity bilaterally, and neuropathy. (R. 337). Ms. Frazier refused to squat and needed help getting on and off the exam table because of her pain.

(R. 338). Dr. Ravi noted that imaging showed degenerative disc disease in the neck and back. (R. 337). He also noted that Ms. Frazier used a cane for standing, balancing, and weightbearing, which he found to be medically necessary. (R. 338). He found no limitation to her sitting, moderate limitations standing, walking, bending, pushing, pulling, and lifting, and offered that she should avoid driving, squatting, and climbing. (R. 340). It is unclear from the record whether Dr. Ravi had access to Ms. Frazier's past medical records.

### C. Administrative Proceedings

#### 1. Hearing before an ALJ

On June 28, 2017, the ALJ conducted a hearing, at which Ms. Frazier was represented by counsel. (R. 24). ALJ Grossman began the proceeding by asking Ms. Frazier about her work history. (R. 28). Ms. Frazier indicated that she had to stop working after her third spinal surgery. (R. 28). The ALJ then asked if the surgery report was in the record, to which Ms. Frazier's attorney responded that the report was not in the record and referenced a letter addressed to ALJ Grossman dated June 21, 2017 listing outstanding records. (R. 28–29, 431). ALJ Grossman responded that they "have a lot here already," although he acknowledged that the medical records from Dr. Babu contained in the record, were progress notes that were not current. (R. 29). ALJ Grossman then proceeded to ask about Ms. Frazier's schedule on the day proceeding the hearing. (R. 30–33). Ms. Frazier had difficulty recounting her activities leading up to physical therapy at 1:00 pm, but spoke about getting her clothes ready and crocheting. (R. 31–32). ALJ Grossman then asked Ms. Frazier about her children and the frequency with which she visits them. (R. 33–35). Ms. Frazier responded that her children visit her frequently, but she recently

traveled three hours to visit her daughter in Pennsylvania and six and a half to seven hours to visit her son in Virginia. (R. 34–35).

Following ALJ Grossman's questions, Ms. Frazier's counsel inquired about her physical therapy schedule, pain management appointments, her epidural injections, her medication regimen, and her pain level at the time of the hearing. (R. 36–39). She described her pain as sharp and rated it a nine out of ten. (R. 38). However, she testified that her pain level was normally an eight or nine. (R. 39). She explained that she received injections every six months, which made her pain tolerable and allowed her to function, but that she was in pain every day. (R. 38–39). Ms. Frazier's attorney noted for the record that Ms. Frazier was crying while describing the pain she was experiencing. (R. 38). Ms. Frazier was also asked about her various functional capacities, including her ability to stand, walk, prepare meals, lift items, push, and pull. (R. 40–41). Ms. Frazier represented that she was limited in all of these activities, except her ability to prepare food. (R. 40–41).

After Ms. Frazier's counsel concluded his questioning, ALJ Grossman asked Ms. Frazier "What's with marijuana?" (R. 43). Ms. Frazier explained that marijuana was found in her system after she was sitting in the car with her niece for three and a half hours while her niece was smoking. (R. 43). She maintained that she herself does not smoke. (R. 43). Ms. Frazier attributed a separate instance of marijuana in her system to the prevalence of marijuana use in her community. (R. 43). As a result of the marijuana found in her system, her pain management treatment was discontinued. (R. 43).

Medical expert, Dr. Sree Devi Chandrasekhar, next testified.[2] (R. 44). Dr. Chandrasekhar is a board-certified physician, practicing pediatrics and internal medicine. (R. 44). Dr. Chandrasekhar was concerned about discrepancies in Ms. Frazier's medical records regarding her gait. (R. 48–50). The doctor noted that Dr. Ravi noted Ms. Frazier's gait is antalgic, but the treating notes from pain management indicate her gait is normal throughout all of her visits. (R. 49–50). Dr. Chandrasekhar was unable to reconcile these notes and recommended that Dr. Babu's February 12, 2016 letter was the most reliable representation of Ms. Frazier's condition. (R. 51). Dr. Babu's February 12, 2016 letter states that Ms. Frazier has failed back syndrome with chronic pain syndrome, cannot return to work because of her pain, and is totally and permanently disabled. (R. 427). Dr. Chandrasekhar testified that Ms. Frazier is not capable of sitting more than 30 minutes at a time without discomfort, not able to stand for 30 minutes without discomfort, and not able to walk more than 20–35 minutes without discomfort. (R. 52).

A vocational expert, Andrew Pasternak, then testified. (R. 63). The ALJ and Mr. Pasternak reviewed Ms. Frazier's work history. (R. 63–66). ALJ Grossman asked Mr. Pasternak if a hypothetical individual with Ms. Frazier's educational background could perform the sedentary work required for a "clerical worker only, clerical assistant, 203.582-054, semi-skilled, SVP-4, sedentary 209.132-010, sedentary, skilled, SVP-6." (R. 66). Mr. Pasternak responded that such an individual could perform those jobs. (R. 66). He also wanted to know whether a person, after 30 minutes of sitting who then had the option to stand for ten minutes or after standing for 15 minutes then had the option to sit for five, could perform these jobs. (R. 66). Mr. Pasternak

---

[2] Dr. Chandrasekhar's name is improperly spelled "Dr. Sanderson-Carr" in the hearing transcript, and the Court will use the proper spelling from his resume. (Compare R. 24 with R. 424).

replied that this was possible as long as the person stayed on task.  (R. 67).  ALJ Grossman then asked whether being off task ten percent of the time and absent once per month due to severe impairment would be problematic.  (R. 67).  Mr. Pasternak testified that this would be "acceptable" to employers.  (R. 68).

## 2.  The ALJ's decision

On August 8, 2017, ALJ Grossman issued his decision denying Ms. Frazier DIB benefits. (R. 78).  He held that "[a]fter careful consideration of all of the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from October 22, 2014, through the date of this decision."  (R. 81).

ALJ Grossman followed the five-step disability determination process.  At step one, ALJ Grossman found that Ms. Frazier had not engaged in substantial gainful activity since October 22, 2014, the alleged onset date.  (R. 83).  At step two, ALJ Grossman found that Ms. Frazier has the severe impairments of cervical and lumbar disc disease.  (R. 83).  At step three, the ALJ found that Ms. Frazier did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in the Act.  (R. 83).  (The impairments listed in 20 CFR Appendix 1, Subpart P, Part 404 are known as the "Listings".  In evaluating Ms. Frazier's orthopedic impairments, ALJ Grossman explained that she did not meet the criteria for Listings 1.03 and 1.04 (regarding orthopedic disabilities).  (R. 83).

At step four, ALJ Grossman found that Ms. Frazier has the residual functional capacity to perform sedentary work, except she requires an option to stand for ten minutes after 30 minutes of sitting and to sit for five minutes after fifteen minutes of standing.  (R. 83–84).  He made this finding based on Ms. Frazier's testimony at her hearing and medical evidence from Dr. Babu, Dr.

Salon, Dr. Patel, an Dr. Ravi. (R. 85–88). The ALJ found his decision was supported by Dr. Salon's and Dr. Ravi's internal medicine consultative examinations. (R. 88). Specifically, ALJ Grossman placed weight on Dr. Ravi's report indicating Ms. Frazier can lift eleven to twenty pounds, sit for six hours at a time, stand for three hours at a time, walk for three hours, sit for eight hours in an eight-hour day, stand for a total of four hours, and walk for a total of four hours in a workday. (R. 87). He also placed weight on Dr. Patel's pain management treatment notes showing normal neurological findings, full muscle strength, and normal gait at every visit. (R. 88). Additionally, the ALJ found that because normal gait was reported at every visit, Ms. Frazier does not need a cane, despite diagnoses from both Dr. Salon and Dr. Ravi. (R. 88). He considered Ms. Frazier's testimony about traveling to visit her children out-of-state to indicate some capability to sit for long periods of time and to support the residual functional capacity. (R. 88). However, he acknowledged that treatment notes show complaints of pain with prolonged sitting and standing, and therefore gave her a "sit/stand option" after a certain amount of time. (R. 88). Finally, ALJ Grossman placed limited weight to Dr. Babu's letter that the claimant is totally disabled on the ground that it is not corroborated by treatment notes. (R. 85, 88).

### 3. **The Appeals Council decision**

On September 6, 2017, Ms. Frazier requested Appeals Council review of the ALJ's Decision. (R. 177). On July 9, 2018, the Appeals Council granted review on the ground that the hearing decision did not evaluate or weigh the opinion of medical expert Dr. Chandrasekhar. (R. 179). Ms. Frazier was given 30 days to respond with more information about her case. (R. 180). Ms. Frazier timely sent two handwritten letters explaining her perspective on the medical records and the ALJ hearing. (R. 244–49). Ms. Frazier sent an additional medical record with visual images of a procedure to be performed and two other medical records—one from her new pain management specialist, Dr. Randa Jaafar, and another from Ms. Tracey, her physical therapist. (R. 14–23). On August 24, 2018, the Appeals Council issued an unfavorable decision, upholding the ALJ's decision denying Ms. Frazier DIB. (R. 4–6). The Appeals Council reasoned that (1) the additional statement submitted by Ms. Frazier when she appealed, "[did] not provide a basis for changing the decision," (2) the medical evidence from Kristen Tracey does not show a reasonable probability that it would change the outcome of the decision, and (3) the medical evidence from Dr. Jaafar is not related to the period at issue. (R. 4). In addition, in reaching its decision, the Appeals Council considered testimony of medical expert, Dr. Chandrasekhar, who indicated that Ms. Frazier could perform a reduced range of sedentary work. (R. 5). It reasoned that this opinion was consistent with the medical evidence on record and gave it some weight. (R. 5).

### 4. **The cross-motions**

On August 30, 2018, Ms. Frazier filed the Complaint in this action alleging that the Commissioner's decision was erroneous and not supported by substantial evidence. (ECF No. 2

at 2). The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF Nos. 21, 27).

Ms. Frazier raises two points: (1) the ALJ failed to develop an adequate record; and (2) the ALJ violated the treating physician rule. (ECF No. 29 at 15–22). The Commissioner argues that the decision is "supported by substantial evidence and is based upon the application of the correct legal standards." (ECF No. 23 at 2).

### III. DISCUSSION

#### A. Applicable Legal Standards

##### 1. Standard of review

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error. Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Id. "In determining whether substantial evidence exists, a reviewing court must consider the whole

record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts. See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources. 20 C.F.R. § 404.1512. Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007). When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-

contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. § 404.1520.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the court will remand the case for further development of the evidence or for more specific findings.  Rosa, 168 F.3d at 82–83 (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2.  Standards for benefit eligibility

For purposes of DIB, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(3)(B). In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988); 20 C.F.R. § 404.1527.

Under SSA regulations, disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof. At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform. See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-

Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. **Treating Physician Rule**

The SSA regulations require the ALJ to give "controlling weight" to "the opinion of a claimant's treating physician as to the nature and severity of the impairment . . . so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess, 537 F.3d at 128 (internal citation omitted); accord Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 426 (S.D.N.Y. 2010). "This preference is generally justified because treating sources are likely to be 'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's medical impairments and offer a unique perspective that the medical tests and SSA consultants are unable to obtain or communicate." Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927([c])(2)).

If the ALJ determines that a treating physician's opinion is not controlling, he is nevertheless required to consider the following factors in determining the weight to be given to that opinion:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.  20 C.F.R. § 416.927(c).  The ALJ must give "good reasons" for not crediting the plaintiff's treating physician.  20 C.F.R. § 416.927(c)(2); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (explaining that Appeals Council had "an

obligation to explain" the weight it gave to the opinions of the non-treating physicians). After considering these factors, the ALJ must fully set forth his reasons for the weight assigned to the treating physician's opinion. Burgess, 537 F.3d at 129.

While the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight. 20 C.F.R. § 416.927(c)(2). See also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Cabreja v. Colvin, No. 14 Civ. 4658 (VSB), 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (explaining that opinions of one-time consultants should not overrule those provided by the treating medical sources unless there are "serious errors" in treating sources' opinions). Failing to apply proper weight to a treating physician's opinion is reversible error. Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015).

### B. Evaluation of ALJ's Decision

#### 1. Duty to develop the record

The Commissioner filed its motion for judgment on the pleadings before Ms. Frazier's, arguing that the substantial evidence supports the ALJ's decision that Ms. Frazier is not disabled; however, the Commissioner did not respond to Ms. Frazier's specific arguments. (See ECF No. 23).

##### a. Gaps in the record

###### i. Dr. Babu

Ms. Frazier alleges that the ALJ erred by failing to obtain Dr. Babu's records, which support his medical assessments of her ability to work. (ECF No. 29 at 18–19). Ms. Frazier argues that

because Dr. Babu treated her for eight years and performed three surgical procedures on the part of her body central to her claim—her back—the limited number of his treatment notes in the record is obvious and should have been developed by the ALJ. (ECF No. 29 at 18). The record lacks any information regarding Ms. Frazier's 2009 and 2011 surgeries, records detailing the need for the 2014 revision surgery, or any post surgery notes. (Id.) Ms. Frazier argues that this missing information would have shed light on why the 2014 surgery was performed and why it was a failure. (Id.) In addition, Ms. Frazier argues that Dr. Babu's assessment of her ability to work, or more thorough explanation of the clinical basis for the limitations he assigned to her, would be beneficial to the ALJ in making his determination. (Id. at 19).

The ALJ had an independent duty to develop the record. Lamay, 562 F.3d at 503, 508–09. Here, the record is not clear that the ALJ made "every reasonable effort" to help Ms. Frazier get medical reports from vital medical sources. 20 C.F.R. § 416.912(b). The ALJ found that Ms. Frazier has severe impairments of cervical and lumbar disc disease. (R. 83). Even after being alerted by letter and during the hearing to the need for additional records from Dr. Babu, who performed Ms. Frazier's three back surgeries, the ALJ did not request or wait for the records. Rosa, 168 F.3d at 79 n.5. Dr. Babu diagnosed Ms. Frazier with "lumbar spondylosis and spinal instability." (R. 256). Ms. Frazier testified to seeing Dr. Babu three times after the surgery and that he last examined her in 2016. (R. 29–30). Because Dr. Babu concluded that Ms. Frazier could not perform any of the functions required for her job, then authorized her return to work with limitations, then deemed her permanently disabled because further surgical intervention could not help her, he is the doctor at the heart of Ms. Frazier's disability claim. (R. 427–29). During the hearing, ALJ Grossman even requested the report from the 2014 surgery and acknowledged

that the notes provided in the record were only progress notes. (R. 28–29). ALJ Grossman seemed to be aware that the record was not complete without further information from Dr. Babu, but proceeded to rule without them. Accordingly, he failed to address all pertinent evidence, which constitutes plain error. Kuleszo, 232 F. Supp. 2d at 57.

### ii. Other sources

Ms. Frazier also argues that the ALJ failed to obtain records from four other sources: Dr. Dharia (her neurologist), Ms. Tracey (her physical therapist), Dr. Minutillo (her primary care physician), and Dr. Patel (pain treatment doctor). (ECF No. 29 at 18). Records from these additional sources "may have been [] useful in assessing Ms. Frazier's disability." (Id. at 18–19). Ms. Frazier argues that she flagged the missing documents for the ALJ's attention before and during the hearing. (R. 29, 431). Specific to Drs. Dharia and Patel, Ms. Frazier argues that both doctors were in positions to "evaluate her capacity to function in a work setting" and the ALJ should have sought medical assessments from these doctors. (Id. at 19).

Ms. Frazier's argument that Dr. Dharia's records should have been obtained is not persuasive. Aside from Ms. Frazier's June 21, 2017 letter highlighting missing documents to the ALJ, Dr. Dharia is only mentioned one additional time in the record: on an October 12, 2015 appointment record, listing Ms. Frazier's current health issues (chronic back pain, gastroesophagal reflux disease, hyperlipidemia, low back syndrome, neuropathy, pre-op evaluation, and trigger finger) and prescribing medication for her health maintenance. (R. 426). Ms Frazier's argument regarding Ms. Tracey's records is likewise not compelling. Unlike Dr. Babu's clearly missing notes, Ms. Tracey's notes do not appear to be lacking or essential. Ms. Tracey's November 2016 functional assessment report is in the record and the Appeals Council

reasoned that Ms. Tracey's follow-up August 21, 2017 letter, noting Ms. Frazier's chronic symptoms and minimal progress, does not provide a basis for changing the ALJ's decision. (R. 4, 271–73). Ms. Frazier's argument regarding obtaining Dr. Minutillo's records is also unpersuasive. The record shows that Ms. Frazier saw Dr. Minutillo and he referred her out for ailments related to her eyes, namely glaucoma. (R. 276, 284, 331). To him, she only reported a musculoskeletal ailment of arthritis, not a cervical or lumbar issue. (R. 285, 325). Ms. Frazier simply argues that "[f]or all we know," missing records from Dr. Dharia, Ms. Tracey, and Dr. Minutillo "may have been" useful. (ECF No. 29 at 18–19). This argument is not persuasive.

Ms. Frazier argues that Dr. Patel's assessment of her ability to work should have been obtained because he treated her for "pain over a period of 17 months." (ECF No. 29 at 19). However, in her argument dedicated to the treating physician rule, Ms. Frazier only argues that Dr. Babu's opinion, as her treating physician, was not afforded appropriate credit or weight. (See id. at 23). In addition, in her June 21, 2017 letter highlighting missing records, Ms. Frazier does not state that a record is missing from Dr. Patel. (See R. 431). Finally, in her motion for judgment on the pleadings, Ms. Frazier argues at length that Dr. Patel's finding that she has a normal gait, is against the weight of the other evidence provided in the record. (ECF No. 29 at 20). Ms. Frazier discounts Dr. Patel's conclusions on numerous occasions and even his position as a treating physician so her argument here that her records are needed is unpersuasive.

On remand, the ALJ should further develop the record by obtaining and evaluating Dr. Babu's notes related to all three surgeries, including pre-surgery, surgical, and post-surgery records.

### b. Ambiguity regarding Ms. Frazier's gait

Ms. Frazier argues that "the ALJ should have sought further information from Dr. Patel about her ability to walk and need for a cane since he appeared to attach so much significance to statements in her records that Ms. Frazier had a 'normal gait.'" (ECF No. 29 at 20) (citing R. 48–50, 86, 88). Ms. Frazier argues that while Dr. Babu and the two consulting physicians found that Ms. Frazier "had an antalgic gait and required a cane for ambulation," (R. 88, 338), the ALJ chose to "arbitrarily" credit Dr. Patel's conclusion that Ms. Frazier's gait was normal over the three other doctors. (Id.) Ms. Frazier argues that the ALJ should have asked Dr. Patel what she really meant by Ms. Frazier's gait being normal since the note appears to be a computer generated default. (Id. at 20–21). The Commissioner argues that the substantial weight of the evidence shows that Ms. Frazier had no gait abnormalities. (ECF No. 15).

ALJ Grossman appears to have carefully reviewed the medical and opinion evidence, but as with the gaps in Dr. Babu's records, the ambiguity regarding Ms. Frazier's gait needs further development. As the ALJ wrote in his decision, Dr. Babu found that Ms. Frazier could not walk and was only able to walk with the help of a cane (R. 85); Dr. Salon observed that Ms. Frazier had a limp and her cane was medically necessary (R. 85); and Dr. Ravi found that her gait was antalgic (R. 87). The only medical professional cited by the ALJ who found that Ms. Frazier's gait was normal was Dr. Patel, during her one year of treatment (R. 86), but ALJ Grossman pieced Dr. Patel's finding with other treatment notes to conclude that Ms. Frazier has a normal gait. He highlighted from Dr. Ravi's notes a statement that Ms. Frazier can walk for one block without a cane. (R. 87). However, in that same section of his analysis, the ALJ leaves ignored the rest of Dr. Ravi's notes, which stated that Ms. Frazier "requires the use of a cane to ambulate." (R. 87).

When the full record is reviewed, the Court finds that the substantial evidence does not support the ALJ's decision regarding Ms. Frazier's gait because all of the other recorded evidence shows that Ms. Frazier's gait was not normal and she needed a cane to ambulate because of her pain. At the very least the status of her gait is ambiguous and the ALJ should collect evidence to resolve such ambiguity. 20 C.F.R. § 416.920b. In addition, Dr. Babu's missing records may reveal more information regarding Ms. Frazier's gait and ambulation, since Dr. Babu treated her for longer than the other physicians. Thus, the ALJ's findings are not conclusive. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."); Longbardi, 2009 WL 50140, at *21 ("In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.").

Accordingly, on remand, the ALJ should further develop the record related to Ms. Frazier's gait and clarify any ambiguity.

### 2. **Treating Physician Rule**

Ms. Frazier argues that the ALJ erred under the treating physician rule by failing to give good reasons "for not crediting Dr. Babu's opinion over those of the two state agency consultants." (ECF No. 29 at 23). Ms. Frazier argues that the ALJ failed to analyze the required six factors and explicitly weigh or reject Dr. Babu's opinion. (Id.) While the Commissioner argues that "recent treatment notes from Dr. Patel, who managed [Ms. Frazier's] pain most

predominantly during the period under review, show that [she] had 'significant improvement in functionality and decreased pain while on the current regimen of medication'" (ECF No. 23 at 15) (citing R. 410), as discussed above, Dr. Babu was also likely Ms. Frazier's treating physician but the ALJ failed to even develop the record with regard to Dr. Babu.  Reviewing the record as a whole, Dr. Babu is likely to be "'the medical professional[] most able to provide a detailed, longitudinal picture' of [Ms. Frazier's] medical impairments and offer a unique perspective that the medical tests and SSA consultants are unable to obtain or communicate."  Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927([c])(2)).

While Dr. Patel managed Ms. Frazier's pain from November 2015 to April 2017 (R. 350–419), Dr. Babu treated Ms. Frazier for eight years, performed her three back surgeries between 2009 and 2014, diagnosed her with "lumbar spondylosis and spinal instability," examined her regularly and most recently in 2016, concluded she could not perform any of the functions required for her job, authorized her return to work with limitations, then deemed her permanently disabled because further surgical intervention could not help her.  (R. 29–30, 256, 263, 427–29).

By failing to develop the record regarding Dr. Babu's treatment, the ALJ was not in a position to properly apply the treating physician rule.  See Burgess, 537 F.3d at 128 (internal citation omitted) (controlling weight is given to the opinion of a treating physician "as to the severity of the impairment . . . so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").  Therefore, the Court need not reach a decision on whether the ALJ failed to properly analyze the treating physician rule.  Instead, on remand, after further developing the

record related to Dr. Babu's treatment, the ALJ should thoroughly consider the six factors required by the treating physician rule and fully set forth his reasons for the weight he then assigns to Dr. Babu's opinion. <u>Burgess</u>, 537 F.3d at 129.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Ms. Frazier's motion (ECF No. 27) is GRANTED and the Commissioner's motion (ECF No. 21) is DENIED. The Commissioner's decision denying benefits is vacated, and this matter is remanded to the agency for further proceedings.

The Clerk of Court is respectfully directed to close this case.

Dated: New York, New York
March 30, 2020

SO ORDERED

_____
SARAH L. CAVE
United States Magistrate Judge